Case No. 24-3230

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

STEPHANIE SOLIS

Plaintiff-Appellant

v.

THE OHIO STATE UNIVERSITY
WEXNER MEDICAL CENTER

Defendant-Appellee

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

REPLY BRIEF OF APPELLANT STEPHANIE SOLIS

---

Ellen M. Kramer (0055552)
emk@crklaw.com
Jason R. Bristol (0072989)
jbristol@crklaw.com
COHEN ROSENTHAL & KRAMER LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
(216) 815-9500 [Tel.]
(216) 781-8061 [Fax]
*Attorney for Appellant*

Oral Argument Requested

# <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS**.................................................................. ii

**TABLE OF AUTHORITIES** ......................................................... iii

**I.      INTRODUCTION**...................................................................1

**II.     OSU'S FACTUAL MISSTATEMENTS**....................................1

**III.    MATERIAL FACTS WHICH REMAIN UNDISPUTED**.................3

**IV.     LEGAL ARGUMENT** ..............................................................4

    **A.    OSU's stated reasons for hiring Wade instead of Solis have no basis in fact and were not the actual reason.**....................................6

    **B.    The District Court erred in its refusal to consider Solis's statistics.**..8

    **D.    On summary judgment, evidence presented by Solis on the number of African American APPs employed at OSU must be accepted as true.**...........................................................................13

    **E.    Solis sustained her burden of providing statistical evidence coupled with independent circumstantial evidence.**.............................14

    **F.    The District Court erred when it accepted OSU's subjective evaluation of the APP Ross Heart candidates.**................................15

    **G.    Solis's statistical evidence is relevant and should have been considered by the District Court as evidence of pretext.**.................16

**V.      CONCLUSION**.....................................................................**18**

**CERTIFICATE OF COMPLIANCE** ................................................20

**CERTIFICATE OF SERVICE** .......................................................21

**ADDENDUM** ..............................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Anderson v. Liberty Lobby, 477 U.S. 242 (1986)** ...................................14

*Asmo v. Keane*, 471 F.3d 588 (6th Cir. 2006) .......................................7

*Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007).................................14, 15

*Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009) ................................4

*Dean v. City of Shreveport*, 438 F.3d 448 (5th Cir. 2006) .................................10, 11

*EEOC v. Olson's Dairy Queens, Inc.*, 989 F.2d 165 (5th Cir. 1993) ...............18, 19

*Gaglioti v. Levin Group, Inc.*, 508 Fed.Appx. 476 (6th Cir. 2012) .........................7

*Gambill v. Duke Energy Corp.*, 456 Fed.Appx. 578 (6th Cir. 2012) ....................18

*Grano v. Dep't of Dev.*, 699 F.2d 836 (6th Cir. 1983)................................17

**Grant v. Metro. Gov't of Nashville and Davidson Cty., Tenn., 446 Fed.Appx. 737 (6th Cir. 2006)** .................................11, 12

*Griffin v. Finkbeiner*, 689 F.3d 584 (6th Cir. 2012) .................................5

*Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009)......................................14

**Helpenstine v. Lewis County, Kentucky, 60 F.4th 305 (6th Cir. 2023)** ...............14

*Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427 (6th Cir. 2002) ...............9, 12, 16

**Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 767 (6th Cir. 2016)** ......4

*Jones-McNamara v. Holzer Health Sup.*, 630 Fed.Appx. 394 (6th Cir. 2015).......7

**Kinnard v. Rutherford Cty. Bd. of Educ., 109 Fed.App'x 85 (6th Cir. 2004)** ...10

***Meditz v. City of Newark***, 658 F.3d 364 (3rd Cir. 2011) ............................................12

***Moffat v. Wal-Mart Stores, Inc.***, 624 Fed.Appx. 341 (6th Cir. 2015) ................4, 5

***Muhammad v. Close***, 379 F.3d 413 (6th Cir. 2004) ...............................................14

***Rorrer v. City of Stow***, 743 F.3d 1025 (6th Cir. 2014) ...........................................14

**Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544 (6th Cir. 2004) .....15**

**Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88 (6th**

**Cir. 1982) ......................................................................................................17**

***Scott v. Eastman Chemical Co.***, 275 Fed.Appx. 466 (6th Cir. 2008) ....................17

***Stokes v. Detroit Pub. Sch.***, 897 Fed.Appx. 493 (6th Cir. 2020) .........................6, 7

**Rules**

**Fed.R.App.P. 32(a)(5) .............................................................................................21**

**Fed.R.App.P. 32(a)(6) .............................................................................................21**

**Fed.R.App.P. 32(a)(7)(B) ........................................................................................21**

**Fed.R.App.P. 32(f).....................................................................................................21**

## REPLY BRIEF

### I.    INTRODUCTION

This appeal is from the District Court's grant of summary judgment to Appellee/Defendant The Ohio State University Wexner Medical Center ("OSU") on Plaintiff/Appellant Stephanie Solis's claim that she was not hired for Advanced Practice Provider ("APP") position 26560 ("APP Ross Heart") due to race discrimination.  Instead, OSU hired white applicant Daniel Wade.

In its Appeal Brief OSU misstates or ignores Solis's arguments and the evidence supporting them.  OSU also presents numerous misleading legal citations.

### II.    OSU'S FACTUAL MISSTATEMENTS

**Acute Care Certification**

OSU's Appeal Brief makes several disingenuous attempts to bolster Daniel Wade's resume at the expense of Solis.  Wade, like Solis, lacked an APP Acute Care Certification.  Farah Depo. I, RE 19, PageID# 357.  Thus, the nearly two full pages of OSU's Brief criticizing Solis for not obtaining that Acute Care Certification not only gives the wrong impression, it is entirely irrelevant.

**4 Ross versus 6 Ross Experience**

Wade also did not have "years of experience working with the same … specific cardiac device as the hiring team," as OSU states.  OSU Appeal Brief, RE 15, p. 10.  Rather, before being awarded the APP Ross Heart position in late 2021,

Wade worked on 4 Ross, which is an ICU unit treating cardiac surgery patients. Solis Depo., RE 24, PageID# 1123-24; Solis Declaration, RE 27, PageID# 1483; Farah Depo.I, RE 19, PageID# 357. The APP Ross Heart position at issue in this case on 6 Ross. Six Ross, unlike 4 Ross where Wade worked, **is not an** ICU unit and does not treat surgical patients. Solis Declar., RE 27, PageID# 1483. Rather, 6 Ross treats progressive care level heart failure patients. Solis Depo., RE 24, PageID# 1124.

Five Ross, which is where Solis had worked for nine years at the time she applied for APP Ross Heart, mainly treats vascular, thoracic and cardiac surgery patients, but occasionally gets patients from other service lines. *Id.* at 1124. The patients on 6 Ross are more similar to those on 5 Ross than to those treated on 4 Ross. As such, Wade's experience on 4 Ross was not as closely aligned with the 6 Ross APP position as Solis's experience on 5 Ross.

**Relevancy of "yes" votes**

OSU also states that Solis did not advance to the second round of interviews for the APP Ross Heart position because she received only two "yes" votes. OSU Appeal Brief, RE 15, p. 16. However, as one of the white APP candidates who advanced to round two received only one "yes" vote,[1] the number of "yes" votes a candidate received was not actually determinative.

---

[1] This candidate is Elliot Rodriguez. Farah Depo. II, RE 20, PageID# 548.

**Comparisons in Dr. Rosen's Report**

OSU improperly states that Solis's statistical data focused on three overbroad and irrelevant comparator groups – the total percentage of the African American populace in Columbus and in Ohio and the percentage of African American APPs nationwide.  OSU Appeal Brief, RE 15, p. 40.  But Dr. Rosen's statistical analysis never mentions the percentage of African Americans in Columbus or Ohio.  Rosen Declaration, RE 26-2.  Instead, Dr. Rosen's analysis only compares the percentage of African American APPs employed at OSU with the percentage of African American APPs in the U.S. labor market.  *Id.* at 1479.

## III.    MATERIAL FACTS WHICH REMAIN UNDISPUTED

Notably, several material facts presented by Solis are not disputed by OSU:

- Despite hiring 120 APPs in the 3 ½ years between January 2019 and September 2022, not a single hire was African American.  Brief in Opp. to MSJ, RE 29, PageID# 1528.

- Ajwad Farah, the hiring manager for the APP Ross Heart position, did not hire any African American APPs in the 3 ½ years between May 2019 and September of 2022.  Farah Depo. I, RE 19, PageID# 320-321, 325.

- Farah hired two African American APPs right after he found out about Solis's OCRC charges.  *Id.* at 320-321.

## IV.  <u>LEGAL ARGUMENT</u>

This appeal is about pretext.  OSU spends several pages of its Brief arguing that there is no dispute over whether OSU had legitimate non-discriminatory reasons for selecting Daniel Wade instead of Solis for OSU's APP Ross Heart position.  As the focus of Solis's appeal is that OSU's legitimate business reasons are pretextual, this effort is redundant and unnecessary.

In an employment discrimination case, if a plaintiff employee establishes a prima facie case, the defendant employer can try to prove that it had a legitimate business reason for its adverse action toward the employee.  *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 *F.3d* 767, 778 (6th Cir. 2016) (citation omitted).  If the employer does so, then, to be successful, the employee must show that the defendant's legitimate business reason was pretextual.  *Id.*

To avoid summary judgment a plaintiff employee must present evidence from which a jury could reasonably find that the employer's proffered reason for the adverse employment action was not the real reason.  *Moffat v. Wal-Mart Stores, Inc.*, 624 Fed.Appx. 341, 347 (6th Cir. 2015) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).  At the summary judgment stage, the employee merely needs to **rebut – not disprove** - the employer's proffered legitimate rationale(s).  *Moffat*, 624 Fed.Appx. at 348 (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)).

The District Court erred when it concluded that the weight of Solis's circumstantial evidence was not enough to establish a genuine issue of material fact on the issue of pretext. Opinion, RE 34, PageID# 1596. All Solis was required to do in response to OSU's MSJ was rebut its purported legitimate business reasons, and she did.

The following evidence was provided to the District Court to show that OSU's proffered rationales were pretextual:

- The alleged LVAD experience and more recent graduate reasons for hiring Wade only came up **after** Solis filed charges against OSU. Farah Depo II, RE 20, PageID# 548-49; Farah Declar., RE 25-1, PageID# 1428-1430.

- The alleged LVAD experience and more recent graduate reasons for hiring Wade is contradicted by documentary evidence related to the hiring. Farah Depo. II, RE 20, PageID# 498; Farah Declar., RE 25-1, PageID# 1429-30.

- Solis applied for **nearly 90 APP positions** without receiving a single offer, while several white APP candidates were hired after applying for six or fewer APP positions. Solis Declar., RE 27, PageID# 1500-01; McDougle Depo. Trans., RE 22, PageID# 760.

- OSU's decision to promote Wade and not Solis involved an analysis of improper subjective criteria, such as perceived timidity and "may not have been the right environment."  Farah Depo. II, RE 20, PageID# 548.

- Solis presented an expert report unrebutted by other evidence which opined that **the statistically significant difference between the expected and actual numbers of African American APPs employed at OSU (85 expected versus two actual) cannot be due to random chance.**  Rosen Declar., RE 26-2, PageID# 1479.

Combined, this evidence is sufficient to meet the burden imposed on a plaintiff to show pretext to defeat a motion for summary judgment.

**A. OSU's stated reasons for hiring Wade instead of Solis have no basis in fact and were not the actual reason.**

While plaintiffs may establish pretext in whatever way they wish, they often do so by demonstrating that an employer's proffered reason(s) was not based in fact or did not actually motivate the employer.  *Stokes v. Detroit Pub. Sch.*, 897 Fed.Appx. 493, 500 (6th Cir. 2020), *reh'g denied* (Apr. 16, 2020).

Inconsistencies between an employer's reasons after discrimination charges are filed, as opposed to the reasons articulated at the time of the adverse action, are probative of pretext.  *Jones-McNamara v. Holzer Health Sup.*, 630 Fed.Appx. 394, 410 (6th Cir. 2015); *Asmo v. Keane*, 471 F.3d 588, 596 (6th Cir. 2006) (citation

6

omitted). An employer who "fully" articulates its reasons for the first time after litigation is filed is "disquieting' and opens the door for a jury to view the employer's reasons as litigation strategy, and not the real reason for a hiring decision. *Gaglioti v. Levin Group, Inc.*, 508 Fed.Appx. 476, 482 (6th Cir. 2012) (citation omitted).

While OSU is correct that Farah has been consistent "**throughout this litigation**," regarding the reasons he hired Wade, it is notable that these reasons do not appear until **<u>after Solis brought these changes</u>**. Farah's pre-litigation reasons for who to hire as an APP differ from his post-litigation reasons. Consistency of reasons are only helpful for an employer if the reasons are truthful, and Farah's are not.

The reasons Farah noted in his interview notes (prepared prior to the filing of Solis's discrimination charges) for liking Wade **<u>prior to the filing of Solis's charges</u>** are: "strong communication skills, professional and friendly, has cardiology nursing experience, interacted well with group, new NP [Nurse Practitioner – also known as an APP] but great 4 Ross RN." Farah Depo. II, RE 20, PageID# 548. Farah's notes do not reference LVAD experience. *Id.*

Nor do Wade's resume or the job description for the APP Ross Heart position reference LVAD experience. Farah Depo. I, RE 19-1, PageID# 357. Due to the complete absence of LVAD experience from every document OSU has related to the

APP Ross Heart position, a reasonable jury could reject the suggestion that OSU hired Wade on account of his LVAD experience.

While Farah also claims he hired Wade over Solis because Wade had obtained his APP degree more recently, Farah's own spreadsheet undercuts this contention. Farah Depo II, PageID# 548. Of the six new graduates on the spreadsheet, only two advanced to the second round of interviews. *Id.* Further, Farah's notes on Wade contradict his post-litigation assertion that Wade's more recent graduation made him a better candidate, as they paint Wade's nursing experience as a positive and his new NP status as a negative; "**New NP but great 4 Ross RN experience.**" *Id.*

Other statements in Farah's spreadsheet about new APP graduates belie his claim that he preferred them to less recent graduates: "Very green," "probably not a good hire…due to lack of overall experience, "New NP without strong RN background," and "No APP experience, but strong 2 Ross RN." *Id.* In other words, Farah's own notes put a lack of APP experience in a negative light.

**B. The District Court erred in its refusal to consider Solis's statistics.**

The District Court declined to consider Solis's expert report on statistics at all in granting summary judgment to OSU, holding that Dr. Rosen's report did not have "significant probative value" because it does not compare the number of African American APPs at OSU to the number of African American APPs in the relevant labor market. Opinion, RE 34, PageID# 1595.

8

Significant statistics coupled with independent circumstantial evidence of discrimination sustains a plaintiff's burden of showing pretext and precludes summary judgment in favor of an employer. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 437-38 (6th Cir. 2002). Dr. Rosen's report found that African American APPs at OSU are underrepresented by eighty-three (83), and the difference between the expected and actual number of African American APPs employed there is so large "that to almost a certainty, the observed pattern" at OSU "could not be due to random chance." Rosen Declar., RE 26-2, Page# 1479.

Significantly, neither the District Court nor OSU cite to any decision which holds that an expert report such as Solis's is unworthy of consideration in deciding whether an employee has established pretext sufficient to rebut the employer's proffered rationales for not promoting the employee. Each case cited by OSU for this proposition in its Appeal Brief is easily distinguishable.

According to OSU, *Kinnard v. Rutherford Cty. Bd. of Educ.*, 109 Fed.App'x 85, 90-91 (6th Cir. 2004) stands for the proposition that Solis's statistics should be disregarded because a valid statistical analysis must encompass the relevant labor market. OSU Appeal Brief, RE 15, p. 38. The statistics at issue in *Kinnard*, however, were rejected because they compared the percentage of African American students in a school district to the percentage of African American teachers.[2] 109 Fed.App'x

---

[2] The *Kinnard* statistics also were not from an expert.

9

at 90.  *Kinnard* does not rule on what the relevant labor market should be; it simply states that **the employment statistics must relate to those in a labor market and not to the students in the school district**.

Not only is *Dean v. City of Shreveport*, 438 F.3d 448 (5th Cir. 2006) not binding on this court, it does not even support OSU's argument that Solís's statistics are unworthy of consideration.  In *Dean*, the statistics at issue were presented on the question of whether the City of Shreveport's affirmative action program was justified, and had nothing to do with establishing pretext.  Further, the *Dean* court stated that a relevant statistical comparison is to the "qualified labor pool."  *Id.* at 457.  Solis does not dispute this; the comparators in her statistics are other African American APPs.  Rosen Declar., RE 26-2.

OSU also provides a long string citation to support its contention that comparator data must be limited to members of the protected class who are qualified, not to the general populace.  OSU Appeal Brief, RE 15, P. 39.  Solis does not disagree.

OSU argues that the Sixth Circuit's ruling in *Grant v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 446 Fed.Appx. 737 (6th Cir. 2006) precludes the use of Dr. Rosen's statistics because *Grant* held that the pertinent inquiry for such use is "'comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the

10

corresponding ratio for the non-protected group.'" *Id.* at 741 (quotation omitted). *Grant* is easily distinguishable from the instant case, however, because it was a disparate impact class action, and statistics are part of proving a prima facie disparate impact claim. *Id.* at 740.

OSU's weak effort to distinguish this court's decision in *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427 (6th Cir. 2002) relies on a statement that is not even in the *Hopson* ruling. OSU's Appeal Brief, RE 15, p. 35. OSU states that "for statistical evidence to be valid and probative in the first instance, it must always be based on data from the relevant labor market." Not only does this statement never appear in *Hopson*, the *Hopson* court never addressed the question of relevant labor market or the data that is required for statistical evidence to be valid and probative.

### C. The relevant labor market is a question of fact.

The question of relevant labor market is factual and OSU presented no facts to show what the relevant labor market for APPs is. *See, e.g.*, *Meditz v. City of Newark*, 658 F.3d 364, 375 (3rd Cir. 2011). Thus, the District Court's finding that the relevant APP labor market is greater Columbus is wrong for two reasons. As the only evidence on this **factual issue** were presented by Solis, the District Court's finding for OSU and against Solis on this issue violates Rule 56. Moreover, the

District Court made an improper factual determination based on facts which were

not even in the record.[3]

Dr. Rosen's report compares the percentage of African American APPs

employed at OSU with the percentage of African American APPs in the U.S., and

the difference is alarming. Rosen Declar., RE 26-2, PageID# 1479. In September

of 2022, the percentage of African American APPs employed in the U.S. was 12.79,

at OSU it was .302%. *Id.* at 1477-78. The District Court erred in refusing to consider

this evidence.

---

[3]Presumably OSU presented no evidence that the relevant labor market is greater Columbus because there is much evidence to the contrary in the record. While the resumes of APP candidates produced by OSU in discovery have redacted the candidates' residence address, the area where the APP candidates are working or in school at the time their applications were submitted is apparent. Therefore, the general geographic region where candidates live can be ascertained. Applicants for the APP Ross Heart position that is the subject of this appeal haled from Milan, Ohio; Middleburg Heights, Ohio; Canton, Ohio; Dayton, Ohio; Lima, Ohio; and Cleveland, Ohio. Farah Depo II, RE 20, PageID# 548. Farah Depo. II RE 19, PageID# 376-391. APP Position 463667, which was at issue in the lower court proceeding but is not part of this appeal, had at least three candidates from outside of Ohio, while four others were outside greater Columbus - Toledo, Alliance, Findlay and Mansfield. McLaughlin Depo., RE 23, PageID# 898-945.

Two of nine candidates were from outside of Ohio (Virginia and California), while two others were from outside of the greater Columbus area (Canton and Springfield) for another APP position for which Farah was hiring manager. Farah Depo. I, RE 19, PageID# 425-472. Thus, even if OSU had produced evidence that the relevant labor markets for the APP Ross Heart position was greater Columbus, it is unlikely that OSU could have successfully proved that. Ultimately OSU's failure to provide any facts at all to rebut Dr. Rosen's use of the percentage of African American APPs in the U.S. as the relevant labor market makes this a moot point.

**D. On summary judgment, evidence presented by Solis on the number of African American APPs employed at OSU must be accepted as true.**

The District Court also ignored F.R.CP. 56 when it declined to accept Solis's statistics on the number of African American APPs employed at OSU on grounds that the data on employee race is voluntarily disclosed.  Opinion, RE 34, PageID# 1595.  It is well-established that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004)).  Also fundamental in ruling on a motion for summary judgment is that the drawing of legitimate inferences from facts are functions of a jury, not of a judge. *Helpenstine v. Lewis County, Kentucky*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

OSU tries to overcome this problem by pointing to *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 178 n.4 (2009), because "similarly flawed statistical evidence" was rejected in *Blair*.  OSU Appeal Brief, RE 15, pp. 42-32.

OSU's reliance on *Blair* is misplaced.  First, the *Blair* court merely noted that the statistics from the plaintiff were of "doubtful relevance" because (unlike Dr. Rosen's report) there was no statistical analysis, the sample size of eight was very small, and the plaintiff's numbers did not distinguish between employees who had been terminated and those who resigned or retired voluntarily.  *Id.* at 530 n.12.

13

Further, *Blair* involved a reduction in force, which employs a different prima face standard than other employment discrimination cases and the statistics were presented as part of the prima facie case.[4]  *Id.* at 529 (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).

The *Blair* ruling does not support the District Court's failure to consider Dr. Rosen's statistics because the race data involved voluntary reporting.  There is no precedent which permitted the District Court to find in OSU's favor on this question.

### E. Solis sustained her burden of providing statistical evidence coupled with independent circumstantial evidence.

Where "significant statistics are coupled with independent circumstantial evidence of discrimination, the plaintiff has met his burden of demonstrating that the statistical disparity is more likely than not due to the defendant's bias, and the defendant is not entitled to summary judgment."  *Hopson*, 306 F.3d at 437-438.

OSU contends that the evidence presented by Solis about the dramatically different APP hiring experiences of white colleagues is insufficient to show pretext because it is the type of simplistic statistical percentage comparison which the Sixth Circuit rejects.  This argument makes no sense, however, as Solis did not present any

---

[4] In reduction in force discrimination cases, the fourth prong of a prima facie case requires a plaintiff to provide "'additional direct, circumstantial, or statistical evidence.'"  *Id.* (quotation omitted)*.*

statistics on this.  Rather, the facts about the dramatically different hiring experiences are circumstantial evidence of race discrimination in OSU's APP hiring.  The District Court also ignored the circumstantial evidence that Farah did not hire any African American APPs in the 3 ½ years between May 2019 and September of 2022 and then suddenly hired two right after he found out about Solis's OCRC charges.  Farah Depo. I, RE 19, PageID# 320-321, 325.

Solis's significant statistical findings were coupled with independent circumstantial evidence to sustain her burden of showing pretext.  *Hopson*, 306 F.3d at 437.

### F.  The District Court erred when it accepted OSU's subjective evaluation of the APP Ross Heart candidates.

The District Court and OSU contend that because there were certain objective criteria allegedly relied on to hire Daniel Wade, the fact that other subjective criteria were used in the process is not relevant.  But this is not the standard in this Circuit in assessing whether an employer's legitimate business reason for a promotion is pretextual.

Solis acknowledges that she cannot rely solely on the fact that OSU used subjective criteria in the evaluation process.  However, if an employer does rely on subjective criteria, its hiring decision must be carefully scrutinized to prevent abuse. *Scott v. Eastman Chemical Co.*, 275 Fed.Appx. 466, 476 (6th Cir. 2008) (quoting *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir.

1982)).  This rigorous scrutiny must be particularly close where, as with OSU's decision to hire Wade, none of the evaluators are members of the protected minority. *Grano v. Dep't of Dev.*, 699 F.2d 836, 837 (6ᵗʰ Cir. 1983).

The careful scrutiny required by the Sixth Circuit was not applied by the District Court.  The interview notes for APP Ross Heart are full of subjective comments, plus there were no African Americans on the hiring team.  Farah's notes about Solis include "timid" and that the environment "may not have been right for her."  Farah Depo. II, RE20, ECF# 348.  Yet one of the white candidates was moved forward in the interview process even though Farah noted that he was not sure if the candidate would be a "good fit" for the team.  *Id.*  These jumbled, disorganized notes are rife with subjectivity and should have been more rigorously scrutinized by the District Court.

### G. Solis's statistical evidence is relevant and should have been considered by the District Court as evidence of pretext.

OSU raises a new argument on appeal – that Solis's expert evidence does not meet the minimum standard of statistical reliability.   The two cases cited by OSU to support this position are easily distinguishable.  *Gambill v. Duke Energy Corp.*, 456 Fed.Appx. 578 (6ᵗʰ Cir. 2012) did not involve an expert report at all; the *Gambill* court determined that the plaintiff's statistics were not probative because they were full of computational errors, the sample size was too small and there was too small

16

a hiring discrepancy to meet the EEOC's four-fifths (4/5) rules of thumb for judging adverse impact. *Id.* at 587-88.

Ironically, OSU's other supporting citation, *EEOC v. Olson's Dairy Queens, Inc.*, 989 F.2d 165 (5th Cir. 1993) actually supports Solis's position. *Olson's*, an EEOC class proceeding, does state that the usefulness of statistical data depends on the validity of the basic reference population. *Id.* at 168. However, the *Olson's* court was presented with expert reports from **both** plaintiff and defendant. The appeals court expressed concern for the "short shrift" which the district court gave the EEOC's expert analysis in light of the "dearth of countervailing evidence" offered by the defendant employer's expert, and on that basis reversed the summary judgment ruling entered in favor of the employer. *Id.* at 169 n.1.

The District Court here gave even less "shrift" to Solis's expert report than the lower court had in *Olson's*. This refusal to consider Dr. Rosen's report, even though there was no expert evidence presented by OSU, disregards the rules on summary judgment. Not only is OSU not permitted to rest on its laurels on a disputed factual question, a trial court cannot reward OSU for doing so, which is precisely what the District Court did in this case. Following the rationale of the Fifth Circuit in *Olson's*, the District Court should be reversed for its failure to consider the evidence in Solis's expert report.

## V.    <u>CONCLUSION</u>

The District Court refused to consider a statistical analysis prepared by a Ph.D. economist because the District Court disagreed with the labor market used by the economist and because the numbers employed "might" not be accurate.  The District Court did so without being presented with a shred of evidence by OSU as what the labor market should be.  Nor did OSU attempt to show that the APP numbers on which the expert relied were wrong; voluntary reporting differs from incorrect.

The District Court's finding that the relevant labor market for OSU's APP positions is the greater Columbus area is both factually and legally incorrect.  A trial court may not disregard on summary judgment an unrebutted expert report which establishes that there is a statistically significant difference so large that the observed pattern cannot be due to random chance.

The District Court's grant of summary judgment to OSU should be reversed.

Respectfully submitted,
COHEN ROSENTHAL & KRAMER LLP

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)
*emk@crklaw.com*
Jason R. Bristol (0072989)
*jbristol@crklaw.com*
COHEN ROSENTHAL & KRAMER LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
(216) 815-9500 [Telephone]
(216) 781-8061 [Facsimile]

*Counsel for Appellant Stephanie Solis*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Appellant certifies that the foregoing **Reply Brief of Appellant Stephanie Solis** complies with the type-volume of Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), according to the word count functions of Microsoft Word 365, the word-processing system used to prepare this brief, there are 4,206 words, including footnotes, in this Brief.

The undersigned counsel for Appellant also certifies that the foregoing **Reply Brief of Appellant Stephanie Solis** complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point.


/s/ Ellen M. Kramer            07/15/2024
Ellen M. Kramer (0055552)       Date
Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of July 2024, a copy of the foregoing **Reply Brief of Appellant Stephanie Solis** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)

**ADDENDUM**

| Record Entry Number | Record Item Description | Date Filed | Page ID Range |
|---|---|---|---|
| 11 | Answer of Defendant to Plaintiff's Complaint | 6/9/23 | 41-50 |
| 19 | Ajwad Farah Deposition Transcript Vol. I | 11/22/23 | 255-490 |
| 20 | Ajwad Farah Deposition Transcript Vol. II | 11/22/23 | 491-550 |
| 21 | Sheila Mapes Deposition Transcript | 11/22/23 | 551-673 |
| 22 | Dr. Leon McDougle Deposition Transcript | 11/22/23 | 674-786 |
| 23 | Brea McLaughlin Deposition Transcript | 11/22/23 | 787-979 |
| 24 | Defendant's Notice of Filing Deposition of Stephanie Solis and Deposition Transcript of Solis | 12/14/23 | 980-1233 |
| 25-1 | Declaration of Ajwad Farah | 12/15/23 | 1425-1435 |
| 26 | Declaration of Dr. Harvey Rosen | 12/15/23 | 1436-1482 |
| 27 | Declaration of Stephanie Solis | 01/05/24 | 1483-1486 |
| 29-1 | Exhibit 1 to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment | 01/05/24 | 1527-1529 |
| 29-2 | Exhibit 2 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment | 01/05/24 | 1531-1535 |
| 29-3 | Exhibit 3 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment | 01/05/24 | 1536-1541 |

| 34 | Opinion and Order | 03/07/24 | 1568-1596 |
|---|---|---|---|
| 35 | Judgment in a Civil Action | 03/07/24 | 1597 |
| 36 | Plaintiff's Notice of Appeal | 03/18/24 | 1598-1599 |